# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| VITO S. S., JR., )<br>)<br>      **Plaintiff** )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>**Commissioner of Social Security**,[1] )<br>)<br>      **Defendant** ) | No. 2:18-cv-00229-GZS |

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a project manager. The plaintiff seeks remand on the bases that the ALJ erred in evaluating his subjective symptoms, determining his physical and mental residual functional capacity ("RFC"), and concluding that he could perform past relevant work as a project manager as actually or generally performed. *See* Itemized Statement of Errors ("Statement of Errors") (ECF No. 12) at 9-20.[3] I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.
[3] In his statement of errors, the plaintiff notes his intention to file supplemental affidavits of both his treating physician, Michael Major, M.D., and himself. *See* Statement of Errors at 12 n.8, 16-17. No such affidavits were filed or offered. In any event, to the extent that the plaintiff intended the court to take their substance into account in weighing whether the ALJ's decision was supported by substantial evidence, the court cannot "accept [a claimant's] new evidence and potentially overturn the Commissioner's decision based on evidence never presented to the Commissioner[,]" an approach that "would be contrary to the structure of [42 U.S.C. §§ 405(g) and 1383(c)(3)], which call for judicial

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, Finding 1, Record at 24; that he had the severe impairments of degenerative disc disease status post laminectomy in 2013 and 2015 and joint dysfunction of the right shoulder, Finding 3, *id.* at 25; that he had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he could frequently and occasionally lift and carry 10 pounds, stand/walk for two hours in an eight-hour day with unrestricted sitting, could not operate foot controls with his right lower extremity, required the use of a cane when ambulating outdoors or on uneven terrain, could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, could not work on irregular or sloped surfaces or at unprotected heights, and could not reach overhead, Finding 5, *id.* at 27; that he was capable of performing past relevant work as a project manager, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id.* at 31, and that he, therefore, had not been disabled from August 1, 2012, his alleged onset date of disability, through the date of the decision, May 19, 2017, Finding 7, *id.* at 32. The Appeals Council declined to review the decision, *id.* at 9-11, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

---

review of the Commissioner's decision." *McDonald v. Soc. Sec. Admin. Comm'r*, No. 1:09-cv-473-JAW, 2010 WL 2680338, at *3 (D. Me. June 30, 2010) (rec. dec., *aff'd* July 20, 2010).

conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Challenge to Evaluation of Subjective Symptoms

The plaintiff first contends that, in partially discounting his allegations of subjective symptoms and limitations, the ALJ ignored portions of his functional report, relied on gaps in treatment without acknowledging his inability to afford it, overstated his daily activities, and ignored the third-party report of a friend, James Hartigan. *See* Statement of Errors at 9-11. I find no basis on which to disturb the ALJ's assessment.

Pursuant to Social Security Ruling 16-3p ("SSR 16-3p"), the factors that an ALJ is to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include (i) whether the individual's statements "are consistent with the medical signs and laboratory findings of record[,]" that is, the objective medical evidence, (ii) the individual's daily activities, (iii) "[t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms[,]" and (iv) "[t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms[.]" SSR

3

16-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018), at 668-69, 671.

The commissioner adopted SSR 16-3p to "eliminat[e] the use of the term 'credibility'" and "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at 665. However, but for the use of the term "credibility," the deferential standard of review of an ALJ's evaluation of a claimant's statements continues to apply. *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

That is true here. First, as the commissioner notes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 16) at 3, the ALJ relied "fundamentally" on the fact that the objective medical evidence did not corroborate the plaintiff's subjective allegations, Record at 28. While the plaintiff focuses on his course of treatment, including reasons for treatment gaps, he does not challenge the ALJ's heavy reliance on objective findings when he did receive treatment. *See* Statement of Errors at 9-11.

Second, as the commissioner observes, *see* Opposition at 7, while the plaintiff indicates that the ALJ ignored aspects of his functional report, including problems with bending, squatting, standing, sitting, kneeling, concentrating, and getting along with others, as well as his need to use a cane, *see* Statement of Errors at 10; Record at 237-38, the ALJ assessed limitations in the plaintiff's ability to sit, stand, stoop, kneel, and crouch and provided for his use of a cane, *see* Finding 5, Record at 27.

Third, the plaintiff contends that, in relying on his ability as of 2015 to walk two to three times per week, the ALJ ignored evidence that he could do so for only 30 minutes, an amount of time even shorter than the two hours required for sedentary work. *See* Statement of Errors at 10; Record at 1016. Yet, as the commissioner rejoins, *see* Opposition at 7, the plaintiff's own treating physician, Dr. Major, indicated that he could stand and/or walk for up to two hours in a workday, *see* Record at 1026.

Fourth, the plaintiff cites his hearing testimony at page 73 of the Record for the proposition that the ALJ relied on purported gaps in treatment without acknowledging that he was "essentially penniless." Statement of Errors at 10. However, while, in the cited passage, the plaintiff testified that he "ha[d]n't had a penny[,]" had "exhausted all my savings[,]" and "have nothing left[,]" he did not testify that he had been unable to obtain needed medical or mental health treatment as a result. Record at 73. In any event, as the commissioner contends, *see* Opposition at 8, any error in this regard is harmless, the ALJ having identified multiple reasons for her assessment of the plaintiff's subjective allegations that are unchallenged and others that survive scrutiny, *see* Record at 28-31; *see also, e.g.*, *Voisine v. Colvin*, No. 2:13-cv-00412-JAW, 2014 WL 5323415, at *5 (D. Me. Oct. 17, 2014) ("[E]ven assuming *arguendo* that some of the bases provided by the [ALJ] for his credibility determination are unsupported by the record, he articulates a number of bases that are. This suffices to survive the applicable deferential standard of review.").

Fifth, while the plaintiff contends that the ALJ largely overstated his daily activities by failing to consider the manner in which he performed them, he fails to specify any activities, apart from his ability to walk, discussed above, that the ALJ assertedly mischaracterized. *See* Statement of Errors at 11.

Sixth, and finally, while the ALJ did not expressly address Mr. Hartigan's function report (Exhibit 5E), *see* Record at 218-25, she cited it in discussing her finding that the plaintiff's depression caused only mild limitations, *see id*. at 26, and listed the "function reports[,]" plural, in summarizing the evidence she considered in assessing the plaintiff's RFC, *id*. at 31. Indeed, Mr. Hartigan indicated that the plaintiff had no problem paying attention, finished what he started, was "fine with" following written instructions, and had no problem following spoken instructions. *Id*. at 223. The ALJ, hence, plainly considered the Hartigan function report. That was all she was required to do. *See, e.g.*, Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018) ("SSR 06-03p"), at 327 (observing that evidence from non-medical sources, such as a claimant's friends, "may provide insight into the severity of the [claimant's] impairment(s) and how it affects [his or her] ability to function" but imposing no requirement that an ALJ expressly discuss such evidence).

In any event, as the commissioner argues, *see* Opposition at 10, even had the ALJ ignored the Hartigan function report, any error would have been harmless. The ALJ relied on the opinion of agency nonexamining consultant Brian Stahl, Ph.D., who expressly considered the Hartigan report in deeming the plaintiff's mental impairments nonsevere. *See* Record at 31, 115-16; *Bowen v. Colvin*, No. 1:14-cv-451-JHR, 2015 WL 5693049, at *4 (D. Me. Sept. 28, 2015) (rejecting claimant's challenge to ALJ's mental RFC determination when, *inter alia*, the ALJ had "either discussed the contrary evidence to which the plaintiff points or relied on the opinions of experts who had considered it").

Remand, accordingly, is unwarranted on the basis of this point of error.

### B. Challenge to RFC Determination

The plaintiff next contends that the ALJ erred in finding that he retained the capacity to perform the sitting and standing requirements of sedentary work and in failing to include any limitations stemming from his diabetes, gastritis, or depression, all of which she deemed nonsevere. *See* Statement of Errors at 11-17. I find no reversible error.

#### 1. Physical RFC

##### a. Ability To Sit, Stand/Walk

The plaintiff contends that the ALJ's finding that he retained the sitting and standing capacity to meet the demands of sedentary work is unsupported by substantial evidence. *See* Statement of Errors at 11-12. He observes that, while Dr. Major found that he could sit, he limited him to standing for only one hour in an eight-hour workday. *See id*. at 12, 1026. He points to physical therapy notes indicating that he lacked the capacity to stand and/or walk for up to two hours per day or sit for a full workday. *See id*. at 12, 844, 857; *see also, e.g.*, Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service Rulings* 1983-1991 ("SSR 83-10"), at 29 (The full range of sedentary work entails "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools[,]" as well as sitting for approximately six hours, and standing or walking for no more than about two hours, in an eight-hour workday.).

This challenge falls short.

The ALJ gave great weight to the physical RFC assessment of agency nonexamining consultant J.H. Hall, M.D., and some weight to the medical source statement of Dr. Major. *See* Record at 31. As the ALJ noted, Dr. Hall "acknowledged an escalation of joint issues in the fall of 2014, and so distinguished two periods, assessing both a light exertional RFC for the period between August 1, 2012[,] to September 19, 2014, and another, sedentary RFC addressing

September 20, 2014[,] to the present." *Id*. (citing *id*. at 117-21). As part of Dr. Hall's sedentary RFC assessment, he deemed the plaintiff capable of standing and/or walking with normal breaks for a total of two hours and sitting with normal breaks for about six hours in an eight-hour workday. *See id*. at 120. The ALJ adopted Dr. Hall's more restrictive sedentary RFC for the entire period at issue. *See id*. at 31. She noted that, indeed, portions of the Hall analysis were "even more restrictive than that offered by the [plaintiff]'s primary care provider, Dr. Major[.]" *Id*. Dr. Major deemed the plaintiff capable of sitting for eight hours, standing for an hour and walking for an hour in an eight-hour workday, *see id*. at 1026, which is consistent with the capacity to perform sedentary work, *see* SSR 83-10 at 29.

The plaintiff does not explain how, if at all, Dr. Hall erred in assessing his ability to sit, stand, and walk. *See* Statement of Errors at 11-13. He does fault the ALJ's partial reliance on Dr. Major's medical source statement on the basis that, when the form was completed, Dr. Major was only treating issues relating to his knees and did not purport to comment on the time period predating his opinion. *See id*. at 12 n.8. This criticism is unavailing. Dr. Major indicated that the limitations that he had imposed had "lasted or . . . will last for 12 consecutive months[,]" Record at 1030, and the limitations he assessed were not confined to those arising from the plaintiff's knees, *see id*. at 1025-30. The Hall and Major assessments, hence, serve as substantial evidence of the plaintiff's physical RFC.

To the extent that the plaintiff relies on physical therapy notations indicating that he had greater limitations, *see* Statement of Errors at 12; Record at 844, 857, "[t]he mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand[,]" *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D.

8

Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019).

### b. Pancreatitis/Gastritis and Diabetes

The plaintiff next contends that the ALJ erred in deeming his pancreatitis/gastritis and diabetes nonsevere due to noncompliance issues, asserting that the record supports a finding that, at least in some instances, noncompliance was not the cause of flareups of symptoms from those conditions. *See* Statement of Errors at 12. He argues that the Hall opinion cannot stand as substantial evidence that he had nonsevere pancreatitis/gastritis and diabetes because Dr. Hall erroneously noted that he had no more symptoms of pancreatitis following a sphincterotomy and lacked the benefit of later-submitted evidence of his need for frequent bathroom breaks and diabetes-related fatigue, dizziness, and blurred vision. *See id*. at 12-13. He posits that the ignored symptoms "could render an individual off task" and "alter the finding of a return to past relevant work," warranting remand. *Id*. at 13.

The plaintiff fails to demonstrate reversible error. In this district, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). The plaintiff merely speculates that these conditions could cause an individual to be off task, precluding his past relevant work.

In any event, as the commissioner observes, *see* Opposition at 14, Dr. Major, who treated the plaintiff for conditions including pancreatitis and diabetes, rendered an opinion postdating all of the evidence on which the plaintiff relies that is consistent with the sedentary RFC assessed by the ALJ, *compare* Finding 5, Record at 27 *with id*. at 1025-30. Thus, even assuming error in the

9

ALJ's reliance on the Hall assessment, Dr. Major's opinion stands as substantial evidence of the plaintiff's RFC taking into account his pancreatitis/gastritis and diabetes.

## 2. Mental RFC

The plaintiff next argues that the ALJ erred in deeming his depression nonsevere when she (i) failed to develop the evidence to substantiate his claim that he had been hospitalized in Florida for suicidal ideation, (ii) did not consider his inability to afford care in observing that she would have expected him to seek care from a mental health specialist had his depression been severe, and (iii) mischaracterized some of his activities, for example, stating that he was capable of going on a six-week "honeymoon" to Spain when there was no record evidence the trip was a honeymoon. Statement of Errors at 13-17. I find no reversible error.

First, as the commissioner rejoins, *see* Opposition at 15, the plaintiff, who was represented by counsel, bore the burden to prove the severity of his mental impairment and to supply documentation supporting his claim, *see, e.g.*, *Faria v. Comm'r of Soc. Sec.*, No. 97-2421, 1998 WL 1085810 at *1 (1st Cir. Oct. 2, 1998) ("When a claimant is represented, the ALJ[] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored.") (citation and internal punctuation marks omitted). The ALJ held the record open for seven days following the hearing, *see* Record at 94; yet, the plaintiff did not then avail himself of the opportunity to submit the missing records.

Second, the plaintiff's hearing testimony cited in support of the proposition that the ALJ ignored his inability to afford mental health care indicates that the plaintiff's doctor (Dr. Major) would have referred him to a mental health specialist if he felt that he needed to see one:

> Q Since that 2013 hospitalization, have you been hospitalized again for any mental healthcare condition?

A   No.  Just relapses and I talk about it with my doctor and he'll refer me to somebody if I need to go again.  It changes to the medical cost.[4]

*Id*. at 71-72.[5]

Third, the plaintiff does not explain how any errors in characterizing his activities, including his trip to Spain, are outcome-determinative.  *See Bolduc*, 2010 WL 276280, at *4 n.3.

Finally, as the commissioner observes, *see* Opposition at 15, the ALJ concurred with agency nonexamining consultant Brian Stahl, Ph.D., that the plaintiff had mild mental limitations and, hence, his depression was nonsevere, *see* Record at 26, 115-16.  The ALJ noted that, although Dr. Stahl did not have the benefit of review of the entire record, she found "no persuasive evidence in the interim to counter [his] assessment."  *Id*. at 26.  The plaintiff does not contest the ALJ's reliance on the Stahl findings, *see* Statement of Errors at 13-17 which constitute substantial evidence in support of her determination that his depression was nonsevere.

### C.  Challenge to Past Relevant Work Finding

The plaintiff, finally, argues that the ALJ erred in determining at Step 4 that he could return to his past relevant work as he performed it or as it generally is performed.  *See* Statement of Errors at 17-20.  However, as the commissioner rejoins, *see* Opposition at 18-20, he conflates two distinct tests in arguing for remand on this basis.

As the plaintiff notes, *see* Statement of Errors at 17, Social Security Ruling 82-61 ("SSR 82-61") describes three possible tests of the ability to perform past relevant work: (i) "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic,

---

[4] It is unclear whether there is a typographical error in the final sentence.
[5] The plaintiff also points to his report to Dr. Major on August 13, 2012, that he had not been able to get in to see a counselor or psychiatrist yet because they either were not taking new patients or refused to see him because he had not been sober long enough.  *See* Statement of Errors at 14; Record at 320.  Yet, that report, in itself, does not undermine the reasonableness of the ALJ's observation that, for the entirety of the period at issue, she would have expected him to have had a higher level of care with a mental health specialist or counselor if his depression was severe.

11

occupational classification of that job, e.g., 'delivery job,' 'packaging job,' etc.[,]" (ii) "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it[,]" and "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy[,]" SSR 82-61, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 837.

As the plaintiff also correctly observes, *see* Statement of Errors at 17, with respect to the first test, the ruling cautions that a "[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic, occupational classification of the work is likely to be fallacious and unsupportable[,]" SSR 82-61 at 837. However, he incorrectly argues that the ALJ relied on vocational expert ("VE") testimony implicating not only the second test (as actually performed) but also the first (as performed pursuant to a generic, broad job description). *See* Statement of Errors at 17-20.

Even assuming *arguendo* that the ALJ erred in finding that the plaintiff could return to his past relevant work as he actually performed it, she properly relied on the VE's testimony that he could return to his past relevant work as a project manager as it is generally performed pursuant to the *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) ("DOT"), § 189.117-030. *See* Record at 31, 90, 92-93. This implicated the third, not the first, of the three possible tests set forth in SSR 82-61:

> ([DOT] descriptions can be relied upon – for jobs that are listed in the DOT – to define the job as it is *usually* performed in the national economy.) It is understood that some individual jobs may require somewhat more or less exertion than the DOT description.
> 
> A former job performed . . . by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this [third] test, if the claimant

12

cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

SSR 82-61 at 837-38 (emphasis in original).[6]

The plaintiff further complains, in passing, that "[n]othing was addressed or questioned" at hearing concerning "the actual definition of the job per the DOT and the consistency between it and [the plaintiff's] description of his work[.]" Statement of Errors at 19. Any such default cannot be laid at the feet of the commissioner. As noted above, "[w]hen a claimant is represented, the ALJ[] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored." *Faria,* 1998 WL 1085810 at *1. *See also, e.g.*, *Baker v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00167-JAW, 2011 WL 1298694, at *5 (D. Me. Mar. 31, 2011) (rec. dec., *aff'd* Apr. 19, 2011) ("There is an expectation that counsel will explore . . . concerns with the [VE] at the hearing, not leave such matters to technical challenges before the courts.").

Remand, accordingly, is unwarranted on the basis of this final point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

---

[6] The plaintiff also cites *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001), and *Breeden v. Astrue*, Civil Action No. 5:11cv00110, 2013 WL 865977, at *1 (W.D. Va. Mar. 7, 2013), for the proposition that remand is required pursuant to SSR 82-61. *See* Statement of Errors at 19. Both cases are distinguishable. In *Vertigan*, the court deemed an ALJ's finding that a claimant could perform past relevant work as a receptionist and cashier unsupported by substantial evidence when a VE had characterized her past relevant work as that of a pharmacy clerk or sales clerk and testified that she could not return to either of those jobs. *See Vertigan*, 260 F.3d at 1051. In this case, the ALJ adopted the VE's characterization. *See* Record at 31-32. In *Breeden*, the court remanded the case when it could not determine whether the ALJ had "appropriately applied the third test set forth in SSR 82-61 . . . or whether he employed the first test . . ., the latter of which is 'fallacious and unsupportable.'" *Breeden*, 2013 WL 865977, at *3 (quoting SSR 82-61 at 837). Here, the ALJ adopted the VE's testimony after the VE had affirmed that he had both read the record and listened to the testimony concerning the plaintiff's work history and was able to classify his prior work as that of project manager, DOT § 189.117-030. *See* Record at 90.

13

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 24th day of June, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge